IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS G. HARMAN,          :
                          :     Civil Action No. 4:04-2027
       Plaintiff       :
                          :
   v.                  :
                          :     (Judge McClure)
MICHAEL R. RAFFERTY,    :
CITY OF WILLIAMSPORT and,  :
MICHAEL W. FOUST,      :
                          :
      Defendants     :

**M E M O R A N D U M**

July 26, 2005

**BACKGROUND:**

On September 13, 2004, plaintiff, Dennis G. Harman, commenced this civil action by filing a complaint in the Middle District of Pennsylvania.  On February 23, 2005, plaintiff filed an amended complaint.[1]  The amended complaint alleges that defendants violated the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951-963, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12189, when they terminated plaintiff's employment with the Williamsport

---

[1]The amended complaint terminated the Williamsport Bureau of Police as a defendant in the action.

Bureau of Police.

On May 13, 2005, defendants filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In compliance with the Local Rule 56.1, defendants contemporaneously filed a separate statement of material facts with references to the parts of the record that support their statements.  The motion is now fully briefed and ripe for our decision.  For the following reasons we will grant defendants' motion, and judgment will be entered in favor of defendants and against plaintiff.

**DISCUSSION:**

<u>**I.  Standard of Review**</u>

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to

carry the nonmovant's burden of proof at trial.'" <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 706 (3d Cir. 1989) (quoting <u>Chippolini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d. Cir. 1987)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. <u>Am. Flint Glass Workers Union v. Beaumont Glass Co.</u>, 62 F.3d 574, (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that demonstrates that there is a genuine issue as to a material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 32; <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).

## II.  Factual Background

Harman was a police officer employed by the City of Williamsport. After undergoing two surgeries on crushed vertebrae Harman was unable to work full-duty police work. Initially, on the basis of his doctor's prognosis, Harman anticipated that he would be able to return to work as an officer in a full-duty capacity. Between 1997 and 2002, while expecting to return to full duty, Harman

3

worked in a light-duty capacity for the police department.  After his doctor

determined in the summer of 2002 that Harman would never be able to return to

full-duty work, and was not capable of performing the required tasks of full-duty

police work, the City of Williamsport terminated Harman's employment.

The following is almost entirely adopted from defendants' statement of

material facts.  (Rec. Doc. No. 11.)  This is the case because plaintiff's response

has not come forward with any new evidence to contradict the evidence offered by

defendants.  (See Rec. Doc. No. 17, Pl's Resp. Defs.' Statement of Material

Facts.)  Where plaintiff has not admitted the defendants' statement, plaintiff has

asserted that he denies the statement as stated.  We note at the outset that none of

plaintiff's denials, which do not bring forth any new or contradictory evidence to

the court, has a material effect on the outcome of our decision.

Harman had two surgical operations to fuse crushed vertebrae.  In November

1989, Harman underwent his first vertebrae surgery.   Then in April 1997, Harman

underwent a second operation on his vertebrae.   Both surgeries were performed by

Rodwan K. Rajjoub, M.D..  In 1989 the City of Williamsport provided Harman

time off to undergo surgery and to recuperate.  Following the original surgery,

Harman returned to full-duty work as a police officer, and was asymptomatic from

4

1989 to 1996.  Then, when Harman was operated on in 1997, the City again provided Harman time off to undergo surgery and to recuperate.

Upon returning to work after his second vertebrae surgery, Harman was assigned to light duty with the police department.  Meanwhile, Harman continued to treat with Dr. Rajjoub and continued working light duty with the expectation that he would be able to return to full-duty work.  (Rec. Doc. No. 12, Ex. A, at 25, 27-29.) In September 1997, Dr. Rajjoub opined that Harman would be able to "return to his duty as a police officer."  (Rec. Doc. No. 12, Rajjoub Letter to Stoltenberg, Ex B; see also Rec. Doc. No. 12, Ex. A, at 30-31.)  Dr. Rajjoub in November 1997 again noted Harman should "continue light duty work at present time."  (Rec. Doc. No. 12, Rajjoub Office Notes Visit Nov. 11, 1997, Ex. C.)  Dr. Rajjoub stated that he would re-evaluate Harman later, but that at that time Harman "should not go to full duty as [a] police officer."  (Rec. Doc. No. 12, Ex. C.)  Harman anticipated that he would be able to return to full-duty work.  In May 1998, Dr. Rajjoub again advised Harman to continue light-duty work.  (Rec. Doc. No. 12, Ex. C.)  In December 1998, Harman had surgery on his left elbow and was provided time off by the City of Williamsport to undergo the surgery and to recuperate.  In January 1999, Harman returned to work performing light-duty assignments.

Light duty can be temporarily[2] extended by the police department to a police officer in order to help the officer come back to work until the officer recovers from his/her injuries and can return to full duty.  (See Rec. Doc. No. 12, Tr. Dep. Michael W. Foust, Ex. G, at 16-24, 33; Rec. Doc. No. 12, Tr. Dep. Robert Fox, Ex. H, at 10-14.)  Harman worked in this capacity for an extended period of time, over a five-year period.

Then, on July 30, 2002, after Dr. Rajjoub examined Harman he opined:

> I do not recommend that he go back to full duty
> unrestricted since he had two previous disc fusions.  I do
> believe that if he goes to full duty unrestricted he may
> injure himself further as a police officer.  I do not
> recommend that he return to that job.  He should be able
> to continue the same job he is doing at the present time
> permanently.

(Rec. Doc. No. 12, Rajjoub History & Physical Jul. 30, 2002, Ex. I.)  The July 30, 2002 report was designed to be an objective assessment of Harman's medical condition and prognosis.  The last time Harman treated with Dr. Rajjoub was in 2002.

Harman was a member of the Fraternal Order of Police (FOP), and the FOP

---

[2]Plaintiff asserts that "nowhere is light duty work in the Williamsport Police Department codified or defined as 'temporary.'"  (Rec. Doc. No. 12, Ex. G, at 21.) That the position is not codified as temporary is irrelevant.

was his collective bargaining representative.  Harman involved his Union in

discussions with the City about his future with the police department.  On

September 26, 2002, Harman, Corporal Whiteman, and Agent Soronge met with

Robert Fox, who at that time was Williamsport's Director of Finance and

Personnel.  Agent Soronge and Corporal Whiteman were acting as FOP

representatives on behalf of Harman at the meeting.  The meeting ended abruptly

when Fox requested Harman's representatives to provide an example of an

accommodation that would allow Harman to work as a police officer in light of Dr.

Rajjoub's letter stating that Harman could not work in full-duty capacity as a police

officer without risking serious injury to himself.  On September 27, 2002, Harman

sent a memo to Fox indicating that he would be speaking with the FOP's solicitor

about the prior day's meeting.

By letter dated October 1, 2002, Michael R. Rafferty, then Mayor of

Williamsport, advised plaintiff that he was no longer eligible for employment in the

Williamsport Bureau of Police, "effective today, October 1, 2002 at 2:00 p.m."

(Rec. Doc. No. 8, at 3, ¶ 15; Rec. Doc. No. 9, at 2, ¶ 15; Rec. Doc. No. 12, Ex. J,

at 16-18.)  In relevant part, the letter also advised Harman as follows:

> Your efforts to rehabilitate yourself after a work-related
> injury have been beyond question.  The Administration

has been a partner in offering light-duty jobs to assist you
in your efforts, with the understanding that your disability
was temporary and that you would, in time, return to your
pre-injury position. Unfortunately, we now understand
that, based on a recent medical opinion, your medical
disability is no longer considered to be temporary, but
permanent.  As you know, the City does not have any
permanent light-duty positions available in the police
force, and you are no longer able to perform, under your
physician s directive, the duties of any police position
that is covered by the collective bargaining agreement.

We have attempted to discuss with you and your
designated Union representatives possible reasonable
accommodations that might be available, but that dialogue
failed, without any reasonable accommodation being
proposed by you or your representatives.

Accordingly, you are no longer able to perform the
essential functions of your position, either with or without
reasonable accommodation. Therefore
you are no longer eligible for employment in the
Williamsport Bureau of Police, effective today,
October 1, 2002 at 2:00 p.m.

(Rec. Doc. No. 12, City of Williamsport Letter Oct. 1, 2002, Ex. M.)

By letter dated October 4, 2002, Mayor Rafferty advised plaintiff as follows:

Effective at the end of the workday on October 1, 2002,
the light-duty position that had been created for you
solely to allow you to work during a period of what was
then believed to be a temporary disability was eliminated.

(Rec. Doc. No. 12, City of Williamsport Letter Oct. 4, 2002, Ex. N.)

The October 4th letter also advised Harman in part:

>This is to clarify potential confusion regarding your job
>status. Effective at the end of the workday on October 1,
>2002, the light-duty position that had been created for
>you solely to allow you to work during a period of what
>was then believed to be a temporary disability was
>eliminated. That elimination of the position occurred
>because of medical information from your physician that
>your physical impairments were no longer temporary, but
>permanent.
>
>With the elimination of the position that had been
>specifically created for you during your then-temporary
>disability, there are no other positions in the police force
>with respect to which you can perform the essential
>functions, either with or without accommodation. If and
>when you feel that there are established police officer
>positions that you are capable of performing, please
>notify us.

(Rec. Doc. No. 12, Ex. N.)

Since October 1, 2002, Harman has not independently sought employment

because of the "pending litigation." (Rec. Doc. No. 12, Ex. A, at 13.) Harman,

has however, applied for jobs through Workers Compensation.[3] Harman has not

---

[3]Harman receives workers compensation benefits. Harman also receives monthly
pension benefits from the City of Williamsport. Harman expects to receive these
benefits for the remainder of his life. On October 4, 2002, Harman submitted an
application for a disability pension retroactive to October 1, 2002. (Rec. Doc. No.
12, Application for Pension, Ex. O.) The only pension for which Harman is
presently eligible is a disability pension because he has not attained the appropriate
age or worked sufficient years to qualify immediately for any other pension.

contacted the City since October 4, 2002 to indicate that he is capable of performing the duties of a police officer.  (Rec. Doc. No. 12, Ex. J, at 48; Rec. Doc. No. 12, Ex. N.)[4]  Harman acknowledges that he has limitations in lifting and cannot get into fights because it could damage his neck according to the medical advice Harman received from Dr. Rajjoub.  Harman's limitations are a result of his injuries to his neck and back.

In order to perform the duties of a police officer, Harman needs to be certified under "Act 120."  All police officers who perform work for the City of Williamsport are so certified.  Harman is no longer certified under "Act 120."  Harman continues to seek to avoid any physical altercations that could injure his back.  Harman has cervical and bilateral arm pain, experiences numbness and

---

Harman receives a monthly pension of approximately $2,363.56.  Both the pension benefits and workers compensation benefits are not taxed by the federal government.  Following his separation from employment, Harman also received unemployment compensation.  Harman receives family health coverage from the City of Williamsport payable for the rest of his life.  Harman continues to receive annually tax-free benefits of $49,000, plus paid health coverage from the City of Williamsport.

[4]Plaintiff contends that this statement is only supported by Rafferty's personal knowledge.  However, plaintiff has not provided evidence that plaintiff told the police that he was capable of performing the duties of a police officer.  Furthermore, the complaints before this court and the Pennsylvania Human Relations Commission do not reconfirm to the city that Harman believes he is capable of performing the duties of a police officer.

tingling, and has reduced range of motion to his neck and waist.

Harman filed a complaint with the Pennsylvania Human Relations Commission on or about March 25, 2003; the Commission dismissed the complaint on or about June 15, 2004. On October 29, 2003, the Pennsylvania Human Relations Commission asked Thomas B. York, Esquire, counsel for Harman to respond to certain information requests.

On February 8, 2004, York advised the Pennsylvania Human Relations Commission as follows:

> Mr. Harman is only limited in that he cannot lift very heavy objects and that he should attempt to avoid serious physical trauma to his back. . . . he should attempt to avoid significant physical altercations that might cause him further injury to his back.

(Rec. Doc. No. 12, York Feb. 18, 2004 Letter, Ex. R, at 1, ¶ 1.) The PHRC, by letter dated June 15, 2004, advised Harman that it was dismissing his complaint of discrimination because the facts of the case did not establish that probable cause existed to credit his allegations of unlawful discrimination. (Rec. Doc. No. 12, PHRC June 15, 2004 Letter, Ex. S.)

Harman is able to drive, dress himself, and brush his teeth. Harman is capable of doing house and yard work including cutting the grass on a riding

11

mower.  Under deposition, Harman indicated something that he cannot do around the house is hang drywall.

Harman stated that he could do the work that he had been doing as an agent for the Williamsport Police Department.  Foust, the former Chief of Police for the City of Williamsport, testified at his deposition that he did not know of any positions available in the police department for Harman.[5]  A police officer/agent who is working full duty can be pressed into service to apprehend suspects in a time of emergency.  Under deposition, Harman testified that he could use a firearm but he was uncertain of whether he would be able to restrain a suspect.  (Rec. Doc. No. 12, Ex. A, at 121-22.)

Although Harman believes he is capable of performing the requirements for an investigator position, Harman acknowledges that there is no crime scene investigator position with the City of Williamsport Bureau of Police.  On October 1, 2002, Harman filed a grievance challenging his separation from employment. Harman sought reinstatement to his former position along with back pay and benefit.  The arbitration hearing was held on December 31, 2003,[6] before a neutral

[5]Harman asserts it is improper for defendants to rely on this evidence, but he has not provided any evidence to the contrary.

[6]The plaintiff admits this date, (Rec. Doc. No. 17, Pl's Resp. Defs' Statement of Material Facts, at 7, ¶ 55.), however, the arbitration decision indicates

arbitrator and, following briefing, the arbitrator issued his award; the grievance was denied.  (Rec. Doc. No. 12, Decision in Grievance July 31, 2003, Ex. U.)

The allegations against defendants Michael Rafferty and Michael Foust are solely based upon the decision to terminate Harman's employment.  Mayor Rafferty consulted with the City Solicitor concerning full compliance with the ADA and the PHRA.  Foust is now a retired police officer, but served as Chief of Police when Harman was separated from employment.  Mayor Rafferty made the decision to separate Harman from employment.

### III.  Harman's ADA Claim

The ADA seeks to protect individuals with disabilities from discrimination by employers.  See 42 U.S.C. § 12101(b).  Harman bears the initial burden of establishing a prima facie case of disability discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), by a preponderance of the evidence.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 & n.5 (3d Cir. 2003); Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 574 (M.D. Pa. 2004).  To establish a prima facie case under the ADA, Harman must

_____

the date of the hearing was July 31, 2003.  (Rec. Doc. No. 12, Ex. U.)

demonstrate that he: (1) is disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of his job, with or without accommodation; and (3) suffered an adverse employment decision because of discrimination.  See Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (c)) being regarded as having such an impairment."  42 U.S.C. § 12102(2); see 29 C.F.R. § 1630.2(g).  Importantly, simply having an impairment that does not substantially limit a major life activity is not a disability, and therefore is not covered by the ADA.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002).

Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(i).  Major life activities are "those basic activities that the average person can perform with little or no difficulty."  29 C.F.R. Pt. 1630, App. § 1630.2 (I).

A "substantially limiting" impairment is an impairment that renders an employee "unable to perform a major life activity that the average person in the general population can perform," or that significantly restricts the employee as to "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j); <u>see</u> <u>Toyota</u>, 534 U.S. at 195-96. Pertinent factors for the court to consider include: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."  29 C.F.R. §§ 1630.2(j)(2)(i)-(iii); <u>see</u> <u>Toyota</u>, 534 U.S. at 196.

<u>A.  Harman has Failed to Make a Prima Facie Case that He is a<br>Qualified Individual With a Disability under the ADA</u>

For the purposes of the instant summary judgment motion defendants have conceded that Harman has a physical impairment.  (Defs.' Br. Supp. Mot. Summ. J., Rec. Doc. No. 14, at 4.)  That impairment, however, must limit one or more of Harman's major life activities in order for Harman to be considered a qualified individual with a disability under the ADA.  We agree with defendants, and find that

15

Harman has not met his evidentiary burden of establishing a prima facie case, more specifically that Harman's impairment limits him in any major life activity.

The evidence in the record indicates that Harman is limited in the activities of hanging up drywall,[7] fighting, and physical confrontations.[8]  None of these manual tasks are of central importance to Harman's daily life.  See Toyota, 534 U.S. at 197; see e.g., Bearley, 322 F.Supp. 2d at 565 (noting walking and standing are major life activities).  Plaintiff asserts in his brief in opposition to defendants' motion for summary judgment that "[g]iven the opportunity, Mr. Harman will explain to the jury how his injury impacts his daily life and specifically 'major life activities' as the phrase is used by the ADA."  (Rec. Doc. No. 17, at 3.)  This vague assertion does not establish a prima facie case for the issue to proceed to trial; plaintiff has not carried his evidentiary burden at the summary judgment stage. See Williams, 380 F.3d at 761; Bearley, 322 F. Supp. 2d at 574; see also St. Mary's Honor Ctr., 509 U.S. at 506; Shellenberger, 318 F.3d at 187 & n.5. Perplexingly, plaintiff's counsel has placed his own burden on defendants.  (See

---

[7]Harman cannot hang drywall because it requires him to lift heavy objects over his head.  (Rec. Doc. No. 12, Ex. A, at 110-11.)

[8]Harman seeks to avoid fighting and physical confrontations in order to avoid re-injuring his neck.  (Rec. Doc. No. 12, Ex. A, at 14-15, 77.)

Rec. Doc. No. 17 at 4 ("The Defendants have not asked Mr. Harman to identify

every specific activity in his life that is impacted by his impairment, so they cannot

presume to have elucidated all such evidence.  The Defendants cannot extrapolate

their limited evidence to conclude that Mr. Harman is not limited in any major life

activity."))

Next, Harman asserts that he is limited in the major life activity of working.

In order to be substantially limited in the major life activity of working, Harman

must be "significantly restricted in the ability to perform either a class of jobs or a

broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities."  Sutton v. United Air Lines, Inc., 527 U.S.

471, 473 (1999); 29 C.F.R. § 1630.2(j)(3)(i).  Plaintiff in his brief opposing

summary judgment asserts "Harman's back injury limits him from performing any

job that requires strain on his back.  That is to say, Mr. Harman cannot perform the

class of jobs requiring any significant physical demand on his back."  (Rec. Doc.

No. 17, at 4.)  There is no medical evidence before the court indicating a lifting

restriction placed on Harman.  There is evidence that Harman should avoid any

severe trauma to his back, but there is nothing in the record to suggest what type of

restriction.  A letter signed by his counsel states "Harman is only limited in that he

17

cannot lift very heavy objects and in that he should attempt to avoid serious trauma

to his back." (Rec. Doc. No. 12, Ex. R.) Counsel's statement is vague and not

evidence to support the claim that plaintiff is limited in a class of jobs that put a

strain on his back.

Finally, plaintiff argues in the alternative that he trained to be a police officer,

and that defendants now assert his back injury prevents him from performing his

chosen profession as a police officer. (Rec. Doc. No. 17, at 5.)[9]  Plaintiff then

notes, "this is one class of jobs, at least according to the Defendants, from which

Mr. Harman has been excluded." (Rec. Doc. No. 17, at 5.) "Police officer" is not

a class of jobs; it was Harman's chosen profession. See Sutton, 527 U.S. at 492.

("To be substantially limited in the major life activity of working, then, one must be

precluded from more than one type of job, a specialized job, or a particular job of

choice.") Again, plaintiff's vague assertions are insufficient to survive defendants'

summary judgment motion.

-----

[9]However, plaintiff's doctor stated in his July 30, 2002 report that, "I do not recommend that [Harman] go back to fully duty unrestricted since he had two previous disc fusions. I do believe that if he goes to full duty unrestricted he may injure himself further as a police officer. I do not recommend that he return to that job." (Rec. Doc. No. 12, at Ex. I.) Harman admitted that his July 30, 2002 medical report was an objective medical assessment and prognosis. That evaluation found that Harman should not return to full duty police work because of the likelihood of injury. (Rec. Doc. No. 12, Ex. I.)

Furthermore, plaintiff has not made a prima facie case that he is capable of performing the essential functions of the job of a police officer with or without a reasonable accommodation.  Plaintiff has admitted that the objective medical assessment conducted by his physician has found him unable to perform the duties of a police officer working in an unrestricted capacity.  Harman is not certified under Act 120, receives disability pension benefits, and seeks to avoid physical altercations so as to prevent trauma to his injured back.  Of course a police officer in full-duty capacity can be called upon to apprehend suspects, a task which might require altercations.  Harman has not indicated, other than the modification of his temporary position into a permanent position, how he can perform the essential functions of a full-duty police officer, the position he was employed to perform by the City of Williamsport.  Plaintiff has failed to establish a prima facie case of discrimination under the ADA.

### B.  The ADA does not Require Defendants to Transform a Temporary Light Duty Position Into a Permanent Position

As noted above, plaintiff has failed to establish a prima facie case that he was discriminated against on the basis of a disability.  We note, however, that the crux of plaintiff's argument is that defendants owe plaintiff a duty to create a permanent light-duty position for Harman, i.e., that a reasonable accommodation to Harman is

to offer him a light-duty position like the temporary one he held at the time of his

discharge from employment, and a position that would not require him to perform

the essential functions of a police officer.  The ADA does not require an employer

to create a new position to accommodate an employee with a disability, nor does it

require an employer to transform a temporary light-duty position into a permanent

position.  Buskirk v. Apollo Metals, 307 F.3d 160, 169 (3d Cir. 2002) (citing

Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996) and Mengine v. Runyon, 307

F.3d 160 (3d Cir. 2002)).

## IV.  Harman's PHRA Claim

The Pennsylvania Human Relations Act forbids "any person, employer,

employment agency, labor organization, or employee, to aid, abet, incite, compel,

or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice."  43 Pa. C.S.A. § 955(e).  Courts generally interpret the

PHRA's provisions identically with the corresponding provisions of the ADA.

Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (citing Kelly v.

Drexel University, 94 F.3d 102, 106 (3d. Cir. 1996)); see also Buskirk, 307 F.3d at

166 n.1.  Therefore, because we find that defendants' are entitled to summary

judgment on plaintiff's ADA claim Harman's PHRA claim fails.

20

**CONCLUSION:**

For the above-stated reasons, by accompanying order we will grant

defendants' motion for summary judgment, and enter judgment in favor of

defendants and against plaintiff.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


DENNIS G. HARMAN,                    :
                                     :      Civil Action No. 4:04-2027
            Plaintiff                :
                                     :
      v.                             :
                                     :      (Judge McClure)
MICHAEL R. RAFFERTY,                 :
CITY OF WILLIAMSPORT and,            :
MICHAEL W. FOUST,                    :
                                     :
            Defendants               :

**O R D E R**
July 26, 2005

For the reasons set forth in the accompanying memorandum,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The motion of defendants for summary judgment on the complaint is

       granted.  (Rec. Doc. No. 13.)

2.     Final judgment is entered in favor of defendants and against plaintiff.

3.     The Clerk is directed to close the case file.


                                     ___s/ James F. McClure, Jr.___
                                     James F. McClure, Jr.
                                     United States District Judge

2